UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DANIEL GROSS,

                    Petitioner,

vs.                                    Case No.  2:10-cv-256-FtM-29DNF

SECRETARY, DEPARTMENT OF CORRECTIONS
and  ATTORNEY  GENERAL  STATE  OF
FLORIDA,[1]

                    Respondents.

_____

## OPINION AND ORDER

### I. Status

    Daniel Gross (hereinafter "Gross" or "Petitioner"), proceeding

with counsel, initiated this action by filing a Petition for Writ

of Habeas Corpus (Doc. #1) pursuant to 28 U.S.C. § 2254 on May 11,

_____

    [1]Petitioner concedes that he improperly named two Respondents
and wishes to voluntary dismiss the Florida Attorney General as a
named Respondent.  Reply at 1-3.  Rule 2(a) of the Rules Governing
Section 2254 Cases in United States District Courts (hereinafter
the "Rules") provides that applicants in "present custody" seeking
habeas relief should name "the state officer having custody of the
applicant as respondent."  The Supreme Court has made clear that
there  "is  generally  only  one  proper  respondent  to  a  given
prisoner's habeas petition." Rumsfield v. Padilla, 124 S.Ct. 2711,
2717 (2004).  This is "'the person with the ability to produce the
prisoner's  body  before  the  habeas  court.'"  Id.  When the
petitioner  is  incarcerated  and  challenges  his  present  physical
confinement "the proper respondent is the warden of the facility
where the prisoner is being held, not the attorney general or some
other  remote  supervisory  official."  Id. at 2718 (citations to
other authorities omitted).  Alternatively, the chief officer in
charge  of  the  state  penal  institution  is  also  recognized  as  the
proper named respondent.  Rule 2(a), Sanders v. Bennet, 148 F.2d 19
(D.C. Cir. 1945).  Petitioner remains in custody.  Accordingly, the
Florida Attorney General is dismissed.

2010.[2]  Petitioner raises one ground challenging his judgment of conviction after a jury trial of first degree felony murder in the Twentieth Judicial Circuit Court, Lee County, Florida.  Petition at 9-10.  Respondent filed a Response to the Petition (Doc. #10, Response), and attached exhibits (Doc. #12, Exhs. 1-19) consisting of documents from trial, the trial transcript, and postconviction records.  Petitioner filed a Reply (Doc. #24, Reply).[3]  This matter is ripe for review.

## II. Procedural History

### A.  Pre-Trial and Trial

A grand jury indicted Petitioner Gross and two co-defendants in connection with the attempted robbery and murder of James Watson on July 16, 2002.  Exh. 1, Vol. I at 12-13.  Before trial, defense counsel moved to suppress Petitioner's July 17, 2002 confession to law enforcement officials.  See Exh. 11 at 113 (transcript of confession); Exh. 1, Vol. 11 at 26-28 (motion to suppress).  In pertinent part, defense counsel argued that Gross' "custodial statement, as a result of the officer's interrogation prior to his Miranda rights being given, which was unrecorded, render[ed] the

---

[2]The Petition was filed in this Court on May 11, 2010; however, the Petition is considered filed when delivered to prison authorities for mailing and, absent evidence to the contrary, is assumed to be the date the inmate signed the document.  Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001).

[3]The operative Reply is actually Petitioner's Amended Reply. See docket.

[subsequent recorded] statement inadmissible due to the failure of the officers to advise [Gross] of his right to remain silent as defined in <u>Miranda</u>.[4]"   Exh. 1, Vol. I at 27.   At the conclusion of the suppression hearing at which Detectives Bell, and Brown, and Petitioner Gross testified, the trial court denied Petitioner's motion.   <u>Id.</u> at 143.

A jury trial took place on November 29-30, and December 1-2, 2005, during which evidence was presented including *inter alia* eye witness testimony and Petitioner's recorded confession.   <u>See</u> Exh. 1, Vol. III at 542 (statement not transcribed).   The jury found Petitioner guilty of first degree murder and attempted robbery with a firearm in case number 02-CF-2575.   <u>See</u> <u>generally</u> Exh. 1, Vol. I through V, TT-1 through TT-4; <u>see</u> Exh. 1, Vol. III at 31 (guilty verdict).   Pursuant to the guilty verdict, Petitioner was sentenced to life in prison on the first degree murder charge and a concurrent 124.5 months on the attempted robbery with a firearm count.   Exh. 1, Vol. IV at 176-177.

### B.   Direct Appeal and Collateral Relief

Petitioner appealed,   Exh. 2, and after briefing and oral argument, Exhs. 3-4, the appellate court affirmed the State court's decision without a written opinion.   Exh. 5; <u>Gross v. State</u>, 957 So. 2d 1175 (Fla. 2d DCA 2007)[table].   Rehearing was denied on June 4, 2007.   Exh. 6.

---

[4]<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

Petitioner next sought postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850.  Proceeding on his amended Rule 3.850 motion, Petitioner raised five grounds of ineffective assistance of trial counsel.  Exh. 9.  After briefing from the State, Exh. 11, and a Reply brief from Petitioner, Exh. 12, the postconviction court summarily dismissed in part and otherwise denied Petitioner's amended Rule 3.850 motion.  Exh. 13. Petitioner appealed, Exh. 14, and the appellate court affirmed the postconviction court's order without a written decision.  Exh. 15; <u>Gross v. State</u>, 29 So. 3d 299 (Fla. 2d DCA 2010)[table].

## C.  Federal Petition for Writ of Habeas Corpus

Petitioner then initiated this timely Petition[5] raising the following ground for relief:

> The decision of the Second District Court of Appeal affirming without opinion Mr. Gross' conviction and sentence (1) is an unreasonable application of clearly established federal law as articulated by the United States Supreme Court in <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), <u>Missouri v. Seibert</u>, 542 U.S. 600 (2004), <u>Thompson v. Keohane</u>, 516 U.S. 99 (1995), <u>Berkemer v. Mccarty</u>, 468 U.S. 420 (1984), and <u>California v. Beheler</u>, 463 U.S. 1121 (1983), and (2) violates the Fifth and Fourteenth Amendments to the United States Constitution where Mr. Gross was given mid-interrogation <u>Miranda</u> warnings while he was in police custody, and the resulting inculpatory statement he gave was not suppressed, leading to his conviction of the offense.

Petition at 12.  Petitioner's argument is that he was in custody, as defined by the Supreme Court in <u>Beheler</u> and <u>Keonhane</u>, and was

---

[5]Respondent concedes that the instant Petition is timely filed, Response at 5, and this Court agrees.

interrogated upon his arrival at the Lee County Sheriff's Office when he confessed to the crime without any _Miranda_ warnings.  _See Id._ at 20-22.  More specifically, Petitioner argues that the recorded incriminating statements that Petitioner gave to law enforcement officials _after_ he was read his _Miranda_ rights should have been suppressed under _Seibert_ because Petitioner had previously provided unrecorded incriminating statements before he was advised of _Miranda_.  Therefore, Petitioner argues that the State court's denial of his motion to suppress was an unreasonable application of _Seibert_ and _Miranda_.  _Id._ at 23-27.

In Response, Respondent argues that the Petitioner has neither overcome the presumption of correctness afforded to the State court's findings of fact by clear and convincing evidence, nor has he demonstrated that the State court's decision resulted in an unreasonable application of federal law clearly established by the Supreme Court, or an unreasonable determination of the facts in light of the evidence.  Response at 11.  In particular, Respondent argues that Petitioner was not "in custody" when he initially arrived at the Sheriff's Office and therefore _Seibert_ does not govern review of this ground.  _Id._ at 13.  In the alternative, Respondent contends that, even if Petitioner was in custody, it is objectively reasonable to conclude that any unrecorded statements were not the product of interrogation based on testimony from Detective Bell.  _Id._  Further, Respondent argues that even if the

Court determines Petitioner was in custody subject to an interrogation, it is objectively reasonable to conclude that there was no contrived effort on the part of law enforcement to undermine the effectiveness of the Miranda warnings by deliberately giving them only after Petitioner had made incriminating statements. Id. at 13-14.

In his Reply, Petitioner argues that he has shown by clear and convincing evidence that the State court's decision was unreasonable based on the record evidence. In support, Petitioner directs the Court to two specific findings of fact by the trial court: (1) that the initial interview was a "get acquainted" interview, and (2) that there was no double teaming by officers Bell and Brown. Reply at 4-7. Petitioner submits that contrary to the trial court's finding, Petitioner's first interview with Officers Bell and Brown was not a get acquainted interview and points to testimony that Petitioner provided information about his involvement in the crime during the first interview. Reply at 5. Additionally, Petitioner points to his own uncollaborated testimony that Detective Bell took his cell phone away. Id. at 6. With regard to double teaming, Petitioner points to testimony from the officers that both Bell and Brown were present in the interview room, and Petitioner's contested testimony that both detectives questioned him simultaneously. Id. at 7. Additionally, Petitioner argues that the trial court failed to consider a key aspect of the

record--Petitioner's uncollaborated testimony that Detective Bell took his cell phone away from him when his mother called him during the initial interview.  Id.

### III.  Applicable § 2254 Law

### A.  Deferential Review Required By AEDPA

This Court has carefully reviewed the record and, for the reasons set forth below,  concludes no evidentiary proceedings are required in this Court.  Schriro v. Landrigan, 550 U.S. 465, 127 S. Ct. 1933, 1939-40 (2007).  Petitioner does not proffer any evidence that would require an evidentiary hearing, Chandler v. McDonough, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court.  Schriro, 127 S. Ct. at 1940; Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003).

Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  Abdul-Kabir v. Quarterman, 550 U.S. 233, 246 (2007);  Penry v. Johnson, 532 U.S. 782, 792 (2001).  Consequently, post-AEDPA law governs this action. Abdul-Kabir v. Quarterman, 127 S. Ct. 1654, 1664 (2007);  Penry v. Johnson, 532 U.S. 782, 792 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007).

Under the deferential review standard, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011). "This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that the state-court decisions be given the benefit of the doubt." Id. (internal quotations and citations omitted). See also Harrington v. Richter, ___ U.S. ___, 131 S. Ct. 770, 786 (2011) (pointing out that "if [§ 2254(d)'s] standard is difficult to meet, that is because it was meant to be.").

Both the Eleventh Circuit and the Supreme Court broadly interpret what is meant by an "adjudication on the merits." Childers v. Floyd, 642 F.3d 953, 967-68 (11th Cir. 2011). Thus, a state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits that warrants deference by a federal court. Id.; see also Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Indeed, "unless the state court clearly states that its decision was based solely on a state procedural rule [the Court] will presume that the state court has rendered an adjudication on the merits when the

petitioner's claim 'is the same claim rejected' by the court." Childers v. Floyd, 642 F.3d at 969 (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

"A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme] Court." Thaler v. Haynes, 559 U.S. 43, 130 S. Ct. 1171, 1173 (2010); see also Carey v. Musladin, 549 U.S. 70, 74 (2006)(citing Williams v. Taylor, 529 U.S. 362, 412 (2000))(recognizing "[c]learly established federal law" consists of the governing legal principles, rather than the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision). "A state court decision involves an unreasonable application of federal law when it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case, or when it unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Ponticelli v. Sec'y, Fla. Dep't of Corr., 690 F.3d 1271, 1291 (11th Cir. 2012)(internal quotations and citations omitted). The "unreasonable application" inquiry requires the Court to conduct the two-step analysis set forth in Harrington v. Richter, 131 S. Ct. 770. First, the Court determines what arguments or theories support the state court decision; and second, the Court must determine whether "fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior"

Supreme Court decision.  Id. (citations omitted).  Whether a court errs in determining facts "is even more deferential than under a clearly erroneous standard of review." Stephens v. Hall, 407 F.3d 1195, 1201 (11th Cir. 2005).  The Court presumes the findings of fact to be correct, and petitioner bears the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

The Supreme Court has held that review "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 131 S. Ct. at 1398.  Thus, the Court is limited to reviewing only the record that was before the state court at the time it rendered its order.  Id.

**B.  Federal Claim Must Be Exhausted in State Court**

Ordinally, a state prisoner seeking federal habeas relief must first "'exhaus[t] the remedies available in the courts of the State,' 28 U.S.C. § 2254(b)(1)(A), thereby affording those courts 'the first opportunity to address the correct alleged violations of [the] prisoner's federal rights.'" Walker v. Martin, ____ U.S. ____, 131 S. Ct. 1120, 1127 (2011)(quoting Coleman v. Thompson, 501 U.S. 722, 731 (1991).  This imposes a "total exhaustion" requirement in which all of the federal issues must have first been presented to the state courts. Rhines v. Weber, 544 U.S. 269, 274 (2005).  "Exhaustion requires that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established

appellate review process.  That is, to properly exhaust a claim, the petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." Mason v. Allen, 605 F.3d 1114, 1119 (11th Cir. 2010)(citing O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) and Castile v. Peoples, 489 U.S. 346, 351 (1989)).

To fairly present a claim, a petitioner must present the *same* federal claim to the state court that he urges the federal court to consider.  A mere citation to the federal constitution in a state court proceeding is insufficient for purposes of exhaustion. Anderson v. Harless, 459 U.S. 4, 7 (1983).  A state law claim that "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Duncan v. Henry, 513 U.S. 364, 366 (1995)(per curiam).  "'[T]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'" McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005) (quoting Kelley v. Sec'y for the Dep't of Corr., 377 F.3d 1317, 1343-44 (11th Cir. 2004)).

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001), cert. denied, 534 U.S. 1136 (2002).  Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar

federal habeas relief . . . . ."   Smith, 256 F.3d at 1138.   A
procedural default for failing to exhaust state court remedies will
only be excused in two narrow circumstances.   First, a petitioner
may obtain federal habeas review of a procedurally defaulted claim
if he shows both "cause" for the default and actual "prejudice"
resulting from the asserted error.   House v. Bell, 547 U.S. 518,
536-37 (2006); Mize v. Hall, 532 F.3d 1184, 1190 (11th Cir. 2008).
In Martinez v. Ryan, __ U.S. __, 132 S. Ct. 1309, 1318 (2012), the
Supreme Court held that if "a State requires a prisoner to raise an
ineffective-assistance-of-trial-counsel claim in a collateral
proceeding, a prisoner may establish cause for a default of an
ineffective-assistance claim ..." when (1) "the state courts did
not appoint counsel in the initial-review collateral proceeding" or
(2) "appointed counsel in the initial-review collateral proceeding,
where the claim should have been raised, was ineffective" pursuant
to Strickland. Id. In such instances, the prisoner "must also
demonstrate that the underlying ineffective-assistance-of-trial-
counsel claim is a substantial one, which is to say that the
prisoner must demonstrate that the claim has some merit." Id.
Second, under exceptional circumstances, a petitioner may obtain
federal habeas review of a procedurally defaulted claim, even
without a showing of cause and prejudice, if such a review is
necessary to correct a fundamental miscarriage of justice.   House,
547 U.S. at 536; Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

### IV.  Findings of Fact and Conclusions of Law

### A. Exhaustion

On direct appeal Petitioner argued that the trial court erred in denying his motion to suppress because the facts from the suppression hearing supported his position that he was in custody at the Sheriff's Office; that he provided a confession while subject to interrogation without any Miranda warning; and, that he was then given a Miranda warning mid-interrogation after which he repeated his prior confession. See generally Exh. 2. Applying these facts, appellate counsel argued that the trial court erroneously applied Seibert. Id. at 17-21. There was no argument on direct appeal that the trial court failed to consider a "key aspect in the record," i.e., that an officer took Petitioner's cell phone away from him.

It is well established that matters raised for the first time in a Reply brief that were not raised in the initial brief are deemed waived. United States v. Levy, 379 F.3d 1241, 1242 (11th Cir. 2004)(citing cases). Here, Petitioner argues for the first time in his Reply brief that the trial court failed to consider the "key fact" that an officer took Petitioner's cell phone away when making its determination whether Petitioner was in custody for purposes of Miranda. Petitioner did not raise this argument in the Petition. See generally Petition. Indeed, the Petition made reference several times to the uncollaborated statement elicited from Petitioner during the suppression hearing that the officer

-13-

took his cell phone way, but did not argue that the trial court failed to consider this testimony.    Thus, the Court deems the argument waived.

In the alternative, the Court finds this argument is unexhausted because it was not raised on direct appeal.    Defense counsel's argument on direct appeal pointed to facts supporting the position that Petitioner was in custody and subject to interrogation upon arriving at the Sheriff's Office when he gave a confession before being advised of <u>Miranda</u>.    The appellate brief did not argue that the trial court failed to consider as a fact that Petitioner's cell phone was taken away from him.    A state law claim that "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." <u>Duncan</u>, 513 U.S. at 366.    Petitioner's failure to raise the same argument on direct appeal that he now raises in the instant Petition has resulted in a  procedural default.

### B.  Merits

Alternatively, the Court turns to address the merits of Ground One.    As discussed above, prior to trial Gross, through counsel, moved to suppress his recorded confession that he knowingly, voluntarily, and intelligently gave after being advised of his <u>Miranda</u> rights.    Upon conclusion of the suppression hearing, review of the parties' briefs, and transcripts, the trial court entered a written order denying Gross' motion, finding as follows:

> There is no evidence to indicate that the first interview (as it is called) was a conscious decision on the part of

the officers Brown or Bell to withhold <u>Miranda</u> warnings. Persuasive evidence shows that the "first interview" was a get acquainted matter plus the detectives were telling the defendant what evidence they already had in their hands but apparently there was no questioning to consciously get information or material from the defendant.   There was no long periods of custodial examination.

The defendant was at the Lee County Sheriff's Department for several hours and there was no indication that this was a basis for intense questioning; that there was any type of double teaming; that the defendant was deprived of any facilities or handcuffed or in any other way pressured.   He was checked on a couple of times by the officers and there were some brief discussions but not enough to rise to the established case <u>Missouri v. Seibert</u>, 124 S. Ct. 2601 (2004).

It also appears that <u>Miranda</u> warnings were effectively given; that there was obviously a choice in which the defendant had to testify or not to testify; that he was not locked into any matters as described in <u>Seibert</u>; and the interrogators did not in anyway use the same techniques as <u>Seibert</u> in which the previous interview was used as a basis for getting additional answers because the tape shows that the defendant was adequately and effectively advised of his Constitutional rights and the choices he had.

Since it is apparent that the defendant [sic] ability to make an informed decision on whether or not to speak after his <u>Miranda</u> Rights were given was not distorted by the brief encounter and he could make this rational choice.   Therefore, he was not in anyway coerced into making this choice.   It is hereby ORDERED AND ADJUDGED that the Defendant's Motion to Suppress is hereby denied.

Exh. 1, Vol. II at 143-44.   Gross' subsequent objection during trial was overruled and the confession was entered into evidence. On direct appeal, the appellate court *per curiam* affirmed.   Exh. 5.

Petitioner has not shown that the State courts' decisions were contrary to or an unreasonable application of federal law set forth

by the United States Supreme Court, or that the State courts'
unreasonably applied the facts in light of the evidence presented.
At the outset, it is undisputed that Officer Brown advised
Petitioner of his Miranda warnings prior to Petitioner providing a
confession that was later introduced at trial. See Exh. 11 at 114
(petitioner's recorded confession acknowledging that Brown advised
him of Miranda and acknowledging that Petitioner initialed the
Miranda waiver form); see also Exh. 1, Vol. IV at 721 (petitioner's
trial testimony on redirect acknowledging that statement was freely
given after Miranda warning). Thus, the rule set forth under
Oregon v. Elstad, 470 U.S. 298 (1985) permits introduction of a
post-warning statement that was knowingly and voluntarily made.
The only statements introduced into evidence at trial were those
statements Petitioner made after being advised of Miranda.

In attempt to overcome the Elstad rule, Petitioner points to
Seibert, which is an exception to the Elstad rule. Petitioner
argues that Officers Brown and Bell employed a "two step" or a
"question first" strategy while he was in custody that undermined
the subsequent Miranda warnings. See generally United States v.
Street, 472 F.3d 1298, 1312-1314 (11th Cir. 2006)(discussing
Elstad and Seibert in context of a § 2255 petition). As the
Eleventh Circuit Court of Appeals explained:

> Because Seibert is a plurality decision and Justice
> Kennedy concurred in the result on the narrowest grounds,
> it is his concurring opinion that provides the
> controlling law. United States v. Gonzalez-Lauzan, 437
> F.3d 1128, 1136 n. 6 (11th Cir. 2006); see also Romano v.
> Oklahoma, 512 U.S. 1, 9, 114 S. Ct. 2004, 2010, 120

L.Ed.2d 1 (1994); <u>Marks v. United States</u>, 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977).   As Justice Kennedy explained, suppression of a post-warning confession is required if 'the two-step interrogation technique is used in a calculated way to undermine the <u>Miranda</u> warnings.'   <u>Seibert</u>, 542 U.S. at 622, 124 S.Ct. at 2616.   That means that if an officer employs a strategy of deliberately questioning an in-custody suspect without any <u>Miranda</u> warnings in order to get a confession, planning to later warn the suspect and get him to repeat his confession, the post-warning confession is inadmissible unless the officer took specific curative steps to ensure that the mid-interrogation warnings achieved the purpose the <u>Miranda</u> decision intended. <u>Id.</u> at 621, 124 S.Ct. at 1615-16.   The curative measures required are a 'substantial break in time and circumstance between the prewarning statement and the <u>Miranda</u> warning' or 'an additional warning that explains the likely inadmissibility of the prewarning custodial statement."   <u>Id.</u> at 622, 124 S.Ct. at 2616.   Curative measures are necessary only where the "question first" tactic has been used.   Otherwise, the <u>Elstad</u> general rule that post-warning statements are admissible, even where they follow pre-warning statements that are not, governs.

<u>Id.</u> at 1313-14.

Here, the trial court determined that Officers Brown and Bell did not use the two-step interrogation technique at issue in <u>Seibert</u>.  The trial court determined that it was merely a brief get acquainted interview considering the totality of the circumstances surrounding Petitioner's initial interview, and there was no intense questioning, no double teaming, and that Petitioner was not handcuffed.   In sum, the trial court found the instant case distinguishable from the facts in <u>Seibert</u> and consequently suppression of the confession made after Petitioner knowingly and voluntarily waived his <u>Miranda</u> rights was not required.

The State court's findings of fact are entitled to the presumption of correctness. These findings were not unreasonable based on the evidence presented. Evidence was adduced that after Officer Bell contacted Petitioner at work, Petitioner voluntarily drove himself to the Sheriff's Office. Exh. 1, Vol. II at 38, 50, 65. When Petitioner arrived at the Sheriff's Office, he entered through the front door. Id. at 53. The officers testified that the initial interview was brief, Id. at 43; that only biographical information was shared, Id. at 42, 55; that there was no questioning of Petitioner, Id. at 50; that Petitioner did not go into any great detail about his involvement in the crime during the initial interview, Id. at 44-45, 61-62; that the room where Petitioner was located was not locked, Id. at 53; and, that Petitioner was not handcuffed and was not under arrest, Id. at 44.

Petitioner's testimony during the suppression hearing corroborated some of these same facts. Petitioner acknowledged that he voluntarily went to the Sheriff's Office. Id. at 65. Petitioner stated that he did not think he was under arrest during the initial interview. Id. at 76. Petitioner acknowledged that during the initial interview, the officers "didn't say much" and that they told him who they were. Id. at 66.

In an attempt to demonstrate the unreasonableness of the State court's factual findings, Petitioner relies extensively on his suppression hearing testimony. Much of Petitioner's remaining testimony during the suppression hearing contradicts the officers'

testimony.  In conclusory terms Petitioner asserted that during the initial interview Officers Brown and Bell "just kept interrogating me for a while."  Id.  Petitioner offered no other facts bolster or elaborate what he meant by this statement.  See generally id.  Petitioner also claimed that the Officer Bell took his cell phone away from him.  Id.  However, Officer Bell did not recall that occurring.  Id. at 57.  Petitioner further testified that his recorded statement given after the Miranda warning was basically the same as his unrecorded, unwarned statement.  Id. at 68.

Despite Petitioner's testimony during the suppression hearing, the record reveals that the trial court's decision was reasonable interpretation of the facts based on the evidence presented and was a reasonable application of federal law.  The officers testified that they did not question Petitioner during the initial interview and only shared background information.  Additionally, the evidence revealed that Petitioner voluntarily arrived at the police station, was not handcuffed, and he understood he was not under arrest until after he gave his Mirandized statement.  The trial court did not make a specific finding about whether Petitioner was "in custody" at the time of the initial interview because it concluded that there was no interrogation.  To the extent the trial court heard any evidence from Petitioner contradicting the officers' testimony that the initial interview was merely a get acquainted interview, the trial court either determined that Petitioner's testimony was not credible, or determined that the officers' recollection of the

events was more credible.  The trial court is in the better
position to weigh credibility of the witnesses based on the
demeanor of the witnesses during the suppression hearing.  Baldwin
v. Johnson, 152 F.3d 1304, 1317 (11th Cir. 1998)(noting federal
court's deference to the trial court's credibility determinations
considering the trial court had opportunity to observe the demeanor
of the witnesses)(citing Marshall v. Lonberger, 459 U.S. 422, 434
(1983)("Title 28 U.S.C. § 2254(d) gives federal habeas [corpus]
courts no license to redetermine credibility of witnesses whose
demeanor has been observed by the state trial court, but not by
them."); Smith v. Kemp, 715 F.2d 1459, 1465 (11th Cir.
1983)("Resolution of conflicts in evidence and credibility issues
rests within the province of the state habeas court, provided
petitioner has been afforded the opportunity to a full and fair
hearing.")).  Nevertheless, the record also shows that the trial
court had reason to question Petitioner's credibility, considering
Petitioner claimed that his second recorded statement was also
given in the absence of the Miranda warnings, despite acknowledging
on the recorded statement that he was advised of Miranda and the
record contained Petitioner's signed and initialed Miranda waiver
form.  See id. at 68; see also Exh. 11 at 114 (tape recorded
statement acknowledging officers advised Petitioner of Miranda and
he signed the waiver form).  "In order for Seibert to apply, 'the
two-step interrogation technique [must be] used in a calculated way
to undermine the Miranda warning." Street, 472 F.3d at 1314.  The

transcript of Petitioner's recorded confession contains no reference to any incriminatory statement Petitioner allegedly made before the <u>Miranda</u> warnings.  <u>See</u> <u>generally</u> Exh. 11 at 113-147. And, Officer Brown's questioning of Petitioner does not allude to any prior statements.  <u>Id.</u>  Because the State court's factual determination was reasonable and properly distinguished the facts <u>sub judice</u> from the facts in <u>Seibert</u>, <u>Seibert</u> did not require suppression of Petitioner's knowing and voluntary confession. Instead, the rule in <u>Elstad</u> applied and permits introduction of the statement given after Petitioner waived his <u>Miranda</u> rights. Consequently, Petitioner is denied relief on his sole ground for relief.

ACCORDINGLY, it is hereby

**ORDERED:**

1.   The Florida Attorney General is **DISMISSED** as a named Respondent.

2.   The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED.**

3.   The Clerk shall enter judgment accordingly, terminate all pending motions as moot, and close the case.

### CERTIFICATE OF APPEALABILITY AND
### LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability (COA) on either petition.  A prisoner seeking a writ of habeas corpus has no absolute entitlement to

appeal a district court's denial of his petition.  28 U.S.C. §
2253(c)(1); <u>Harbison v. Bell</u>, 556 U.S. 180, 183 (2009).  "A [COA]
may issue . . . only if the applicant has made a substantial
showing of the denial of a constitutional right."  28 U.S.C. §
2253(c)(2).  To make such a showing, Petitioner "must demonstrate
that reasonable jurists would find the district court's assessment
of the constitutional claims debatable or wrong," <u>Tennard v.
Dretke</u>, 542 U.S. 274, 282 (2004), or that "the issues presented
were adequate to deserve encouragement to proceed further,"
<u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003)(citations and
internal quotation marks omitted).  Petitioner has not made the
requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate
of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Fort Myers, Florida, on this ___10th___ day
of June, 2013.

_____
**JOHN E. STEELE**
**United States District Judge**

SA: alj
Copies: All Parties of Record

-22-